# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# AT NASHVILLE

| | |
|---|---|
| TIFFANY GAINES, *individually and on behalf of those similarly-situated*, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TEKPRO, LLC, )<br>YUJUNG "CHRIS" YONG, and )<br>WEI TING "TINA" CHANG, )<br>)<br>Defendants. )<br>) | Case No.    3:22-cv-00883<br><br>**JURY TRIAL DEMANDED** |

## JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT

Come Plaintiff Tiffany Gaines, by and through counsel, and Defendants Tekpro, LLC, Yujung "Chris Yong, and Wei Ting "Tina" Chang, by and through counsel, and jointly move the Court for approval of their agreement to settle the claims of Plaintiff and the opt-in plaintiffs in this matter[2] under the Fair Labor Standards Act ("FLSA"). Specifically, the parties' settlement agreement is attached hereto as Exhibit 1. To summarize the agreement, the parties propose, subject to the Court's approval, that the FLSA claims of Plaintiff and the opt-in plaintiffs against Defendant in this matter be settled in exchange for Defendant paying $15,347.14, of which $7,297.14 is to be paid to Plaintiff Tiffany Gaines, $300.00 is to be paid to Opt-In Plaintiff Sara Holder, $250.00 is to be paid to Sharolette Cook, and $7,500.00 is to be paid on account of Plaintiff's attorney's fees and litigation expenses.

---

[2] Reference is made herein to the "opt-in plaintiffs." This term refers to the two persons who filed consents to join this action, specifically Sara Holder (Ct. Doc. 7-1) and Sharolette Cook (Ct. Doc. 26-1).

The parties represent that they have entered into the settlement in an arms-length transaction after Plaintiff engaged counsel who (A) investigated Plaintiff's claims, (B) initiated Plaintiff's claims in this matter, (C) sought and obtained conditional certification of this matter as a collective action under the FLSA, (D) communicated with the opt-in plaintiffs, (E) informally sought discovery from Defendant to support the claims of Plaintiff and the opt-in plaintiffs (including obtaining and performing analysis of spreadsheet timesheet documents Defendant maintained for Plaintiff and each opt-in Plaintiff), and (F) investigated Defendant's asserted defenses (including Defendant's defenses regarding its timesheets and regarding its alleged good faith belief that its classification of the employees as exempt was correct).

Thereafter, the parties engaged in settlement discussions over a period of many months. The settlement discussions ultimately resulted in a settlement which was reduced to a formal settlement agreement (Exhibit 1). The parties have signed the agreement, and Plaintiff's counsel believes the settlement is not only fair, but a good resolution for Plaintiff and the opt-in plaintiffs of the settled claims.[1] The parties now ask the Court to approve the settlement.

## PROCEDURAL BACKGROUND OF SETTLEMENT

This matter was filed on November 2, 2022 by Plaintiff. Ct. Doc. 1. Plaintiff asserted that Plaintiff and similarly-situated employees were not paid for all of their work in excess of forty hours per week because Defendant misclassified Plaintiff and other employees as independent contractors and therefore did not pay them overtime compensation.

Defendant filed an Answer on January 24, 2023. Ct. Doc. 21. The Defendant's Answer generally admitted that Defendant had misclassified Plaintiff as an independent contractor and that Plaintiff should instead have been classified as an employee, but denied that other employees were

---

[1] The settlement resolves the claims of Plaintiff and the opt-in plaintiffs raised in this action or that are otherwise related to alleged non-payment of overtime compensation. Exhibit 1 at ¶ 3. The parties recognize that the classification issue that was the subject action (of Plaintiff and the opt-in plaintiffs as independent contractors at the time wages were paid) may also raise a separate question of whether taxes were paid and reported correctly (there are different tax withholding and payment requirements for independent contractors than there are for employees), and that Plaintiff Gaines has reported the issue to the IRS, but the agreement is not intended to, and does not, resolve or affect the resolution of that separate issue. *Id.* at ¶ 4.

entitled to overtime compensation and otherwise denied that Plaintiff's violations were anything other than in good faith. *Id*.

Thereafter, Plaintiff and Defendant negotiated relating to the appropriate relief to be granted relating to notice to other workers; the parties ultimately agreed to a joint motion for notice to be issued. Ct. Doc. 24. The Court granted the parties' motion and directed that notice be issued to similarly-situated workers. Ct. Doc. 25. In accordance with the Court's Order, Plaintiff caused notice to be issued to the similarly-situated workers, and an additional[4] Opt-In Plaintiff, Sharolette Cook, joined the action (Ct. Doc. 26-1).

## COURSE OF SETTLEMENT DISCUSSIONS

Counsel for the parties discussed relatively early in this action a procedure to try to move the case towards a potential settlement resolution. Specifically, the parties both indicated their willingness to discuss settlement, but wanted to do so after the FLSA notice motion so that the identity of the persons who would join this action would be known.

Defendant recognized that Plaintiff would need documents from Defendant in order to prepare for an informed mediation, and therefore, agreed to informally produce information to Plaintiff, including timesheets Plaintiff and each opt-in plaintiff maintained regarding the amount of time worked. Plaintiff was able, based on these documents, to compute the amounts owed under Defendant's documents, as well as to assess the validity of Defendant's defenses.

Thereafter, the parties negotiated, and ultimately reached their proposed settlement. Defendant and Plaintiff request that the Court approve the settlement.

## ANALYSIS

Parties may submit a proposed settlement of FLSA claims to the Court for approval. *See, e.g.*, *Ross v. Jack Rabbit Servs., LLC*, No. 3:14-CV-44-DJH, 2016 WL 7320890, at *2 (W.D. Ky. Dec. 15, 2016). In deciding whether to approve a settlement, the Court must first determine

---

[4] Opt-In Plaintiff Holder joined this action prior to notice being issued. Ct. Doc. 7-1.

whether there is a bona fide dispute over liability or coverage. *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. CIV. A. 06-299-JBC, 2008 WL 4724499, at *1 (E.D. Ky. Oct. 23, 2008). If there is such a dispute, the Court must then determine whether the settlement fairly and reasonably resolves that dispute. *See id.* The Court also may review the reasonableness of the fees sought by Plaintiffs' counsel (i.e., that the settlement's terms relating to payment to Plaintiff's counsel are fair to the employees being represented by that counsel). Under the present circumstances, the parties' settlement should be approved on all of these accounts.

### I. There is a Bona Fide Dispute Between the Parties Regarding Whether Defendant is Liable At All, and, If So, in What Amount.

The purpose of the "bona fide" dispute requirement is to prevent employers from forcing employees to compromise their wage claims (i.e., accept in "settlement" less than they could recover through litigation) in circumstances where there is no actual dispute about whether the employee was owed overtime compensation. *See Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 709-710 (U.S. 1945) ("[t]o permit an employer to secure a release [of a 29 U.S.C. § 216(b) liquidated damages claim] from the worker who needs his wages promptly will tend to nullify the deterrent effect which Congress plainly intended that Section 216(b) should have"). This prevents the employer from "contracting around" the requirements of the FLSA. *Barrentive v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 740 (1981) ("FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate").

Here, the parties have a bona fide dispute. Plaintiff asserts she and the opt-in employees worked overtime for Defendant but were not paid overtime compensation. Ct. Doc. 1. Defendant admits that the Plaintiff should have been classified as an employee, but

denies that it willfully violated the FLSA and asserts that any violation was in good faith. See Ct. Doc. 21. The parties only reached a resolution after Plaintiff initiated this contested civil action.

Thus, the employer is not "contract[ing] around" the FLSA by entering into the settlement, and the concerns relevant to the "bona fide dispute" requirement (relating to "settlements" initiated by the employer as a ruse to pay employees less than the FLSA requires in the absence of a dispute about liability) are simply not applicable. *Ritterbeck v. Akron Family Restaurant*, 2016 WL 6947018 at *1 (N.D. Ohio 2016) ("[i]n reviewing the settlement of a federal plaintiff's FLSA claims, the district court must '"ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime'… The existence of a bona fide dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA"). Plaintiff and Defendant are certainly at arms-length, and seek approval to resolve this non-contrived, *bona fide* contested litigation.

II. **The Settlement Terms are Fair and Reasonable.**

Accordingly, in light of the parties' dispute, the next step is to determine whether the parties' proposed resolution of the dispute is reasonable. Courts determine whether an FLSA settlement is reasonable by examining a number of factors. Specifically, courts consider (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; and (5) the public interest in settlement. *Ritterbeck v. Akron Family Restaurant*, 2016 WL 6947018 at *1 (N.D. Ohio 2016), citing *Crawford v. Lexington-Fayette Urban Cnty,* 2008 WL 4724499, at *3 (E.D. Ky. 2008), *itself citing Int'l Union, United Auto., Aerospace, and Agr. Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

Here, the factors weigh in favor of approval. First, there is no fraud or collusion. Absent evidence to the contrary, no fraud or collusion should be presumed to exist. *Ross*, 2016 WL 7320890, at *3. There is no such evidence in this case. To the contrary, the parties reached a settlement only after Plaintiff initiated litigation against Defendant, sought and obtained an order authorizing notice to other workers, obtained informal discovery adequate to assess the claims and defenses, and after the parties vigorously contested the validity of Plaintiffs' claims and Defendant's defenses.

Further, the amount provided in the settlement reasonably compensates Plaintiff and the opt-in plaintiffs for their claims asserted in this case. Specifically, the settlement awards Plaintiff the full amount of overtime compensation and liquidated damages that Defendant's timesheet reflects she worked, and awards the opt-in plaintiffs more overtime compensation and liquidated damages than they would receive if the finder of fact concluded that Defendant's timesheets accurately reflected the amount of work performed by the opt-in plaintiffs.

The settlement, in addition to providing an aggregate amount to Plaintiffs justifying approval, also contains other aspects which support approval. In addition to paying for overtime compensation, the settlement further provides that Defendant must pay an amount on account of liquidated damages equal to the amount paid for unpaid wages. Defendant disputes that it would have been liable for liquidated damages, but recognizes that FLSA caselaw reflects that liquidated damages awards are the norm, and that the burden of establishing a "good faith" exception under 29 U.S.C. § 260 falls on the defendant/employer, not on the employee. *See Acosta v. CPS Food, Ltd.*, 2017 WL 5157238 (N.D. Ohio Nov. 3 2017) (burden to avoid liquidated damages rests on employer, and defendant failed to show it took affirmative steps to determine legality of its actions).

In summary, the settlement provides Plaintiff and the opt-in plaintiffs with very substantial benefits on account of their FLSA claims, including the full value of relief (and, in the opt-in plaintiffs' case, more than the full value) that could have recovered under the FLSA under the only applicable documents. In light of this analysis, and based on Plaintiff's counsel's experience and review of the litigation as a whole[13], Plaintiff's counsel has concluded that the settlement represents a fair compromise of Plaintiff's position and a good result for Plaintiff and the opt-in plaintiffs. *See Barr v. Cleveland Metroparks*, No. 1:17-CV-1390, 2018 WL 692025, at *2 (N.D. Ohio Feb. 2, 2018) (approving settlement where it was "the result of arms-length negotiations between parties that were represented by able counsel").

The complexity, expense, and likely duration of the litigation also weigh in favor of approval. *See Cooper v. Winking Lizard, Inc.*, No. 1:16CV1513, 2017 WL 4465759, at *3 (N.D. Ohio Oct. 4, 2017) (approving pre-certification settlement of FLSA claims in part because of "the factual and legal complexity of the case"). If the case were to proceed, Plaintiff and Defendant would have to litigate numerous issues. While such litigation could increase the amount of Plaintiff's reasonable attorney's fees recoverable under the FLSA, Plaintiff would still herself only receive unpaid overtime compensation and liquidated damages and, as discussed above, Plaintiff views the amounts to be recovered for unpaid overtime compensation and liquidated damages as an excellent result.

Further, the litigation has advanced to a point at which Plaintiff would be required to make significant outlays of litigation-related expenses to proceed. Specifically, but for the settlement,

---

[13] Plaintiff's counsel has thoroughly investigated the potential claims in this matter, including through extensive review of the documents, discussion with each plaintiff, and legal research, and is of the opinion that it is in the best interests of Plaintiff and the opt-in plaintiffs that this settlement be approved, and requests that the Court approve the settlement.

Plaintiff would ultimately need to advance expenses relating to depositions, which would include depositions of members of Defendant's management and, depending on Defendant's litigation strategy, of Plaintiff and/or the opt-in plaintiffs and potentially other hourly employees.

And even if Plaintiff did prevail, the litigation would further delay Plaintiff's recovery. If the Court did not approve the settlement, and Plaintiff proceeded with this action until recovery, the inevitable delays associated with litigation (including potential appeal) would mean that actual payment to Plaintiff would likely be a year or two, or even longer, from now. The settlement, in contrast, provides for Plaintiff's prompt receipt of payment following Court. *See Cooper v. Winking Lizard, Inc.*, No. 1:16CV1513, 2017 WL 4465759, at *3 (N.D. Ohio Oct. 4, 2017) (approving settlement in part because "'the certainty and finality that comes with settlement also weighs in favor of' approving a fair and reasonable settlement"), quoting *Dillworth v. Case Farms Processing*, No. 5:08-cv-1694, 2010 WL 776933, at *6 (N.D. Ohio 2010).

Finally, the likelihood of success favors approval. Litigation is inherently risky, and the settlement provides the parties with certainty. Plaintiff and the opt-in plaintiffs could theoretically receive more at trial, but it is also possible, or even likely, that they would receive less. On balance, the settlement returns a good result to Plaintiff and the opt-in plaintiffs. Indeed, while it would be appropriate for this Court to approve this settlement even if it could not predict which party would prevail at trial, *See Barr*, 2018 WL 692025, at *2 ("[w]hile the Court is not in a position to assess the likelihood of success on the merits, as the case was still in the early stages when settlement was reached, the Court finds that the other relevant factors weigh in favor of approving the settlement."), the award to Plaintiff of the amount proposed to be paid through the settlement is quite substantial, and supports approval of the settlement as reasonable.

### III    Plaintiff' Counsel's Fee is Reasonable and Should Be Approved.

Further, in an action under 29 U.S.C § 216(b), the award of attorney's fees, which is mandatory, *Ross*, 2016 WL 7320890, at *5, should be approved. The amount of those fees, however, is within the Court's discretion. *Id.* The fee must be determined to be reasonable – that is, that it does not excessively compensate counsel at the expense of the represented employees. *Id.* A reasonable fee is one that can attract competent counsel but does not produce windfalls. *Id.*

Here, the parties' settlement provides for payment to Plaintiff's counsel of $7,500.00, which effectively amounts to attorney's fees of $6,966.20 and reimbursement of advanced expenses in an amount of $533.80 (Plaintiff's expenses in this matter are set forth in a detailed time and expense sheet, a copy of which is attached to the Declaration of Mark N. Foster, which is itself attached hereto as Exhibit 2). Accordingly, counsel is receiving an effective payment of 45% of the recovery for fees (the after-expense fee amount of $6,966.20, divided by the total settlement payments of $15,347.14). See Exhibit 2.

The contingency fee agreement between Plaintiff and Plaintiff's counsel provides that, upon a recovery, Plaintiff's counsel will be reimbursed for advanced expenses, and will also receive "the greater of" 40% of the total recovery or "the amount expressly awarded by a court or arbitrator as attorney's fees under any statute, contract provision, or legal theory allowing the recovery of attorney's fees." Here, in addition to recovering her unpaid wages and liquidated damages, a substantial exposure of Defendant is that, if Plaintiff prevails (and Plaintiff contends she is essentially guaranteed to prevail since Defendant has admitted it misclassified Plaintiff), Plaintiff may recover her attorney's fees, and Plaintiff has incurred over 30 hours of attorney time valued at over $11,000.00 (without application of any multiplier). Thus, Plaintiff's counsel's agreement to accept a lower amount as part of the settlement is a substantial benefit to Defendant

(Plaintiff and the opt-in plaintiffs will not be liable to Plaintiff's counsel for any other amount; Plaintiff's counsel's fees will come solely from Defendant)

"The Sixth Circuit has permitted fee awards ranging from 10 to 50 percent." see *In re: Amazon.com, Inc. Fulfillment Center Fair Labor Standards Act (FLSA) and Wage and Hour Litigation*, No. 228 in United States District Court for the Western District of Kentucky, No. 3:14-md-02504-DJH (2016), *citing Bowling v. Pfizer*, 102 F.3d 777, 780 (6th Cir. 1996). (affirming fee award of 10 percent of $102 million common fund); *Clevenger v. Dillards, Inc.*, No. C-1-02-558, 2007 U.S. Dist. LEXIS 174, at *10-11 (S.D. Ohio March 9, 2007) (finding 29 percent fee to be "modest and . . . below what is often awarded by district courts in th[e Sixth] Circuit" and citing various cases in support of that conclusion). Here, the proposed award to Plaintiff' counsel of fees is appropriate and reasonable.

Further, the amount of counsel's fee is also reasonable, when assessed in light of a lodestar analysis. Plaintiff' counsel has expended substantial time, including in connection with a detailed complaint, seeking and obtaining both conditional certification, participating in informal/settlement discovery in order to enable settlement discussions, extensively reviewing the relevant documents and preparing a detailed spreadsheet analysis, communicating with opt-in plaintiffs, preparing the instant motion, and negotiating the terms of the more formal settlement agreement.[15]

Finally, Plaintiff' counsel submits that, given that counsel took the representation on a contingency fee basis, which enabled the representation to proceed, a reasonable lodestar multiplier for the risk associated with this type of representation would be appropriate if there were not a settlement. *See In re: Amazon.com, Inc. Fulfillment Center Fair Labor Standards Act (FLSA)*

---

[15] Of course, there will be a modest amount of additional work after submission of this motion in connection with ensuring the complete administration of the settlement, if approved.

*and Wage and Hour Litigation*, No. 228 in United States District Court for the Western District of Kentucky, No. 3:14-md-02504-DJH (2016) ("[a] multiplier above 1 is reasonable in a contingent-fee case, and 'most multipliers are in the relatively modest 1-2 range'"; approving award equivalent to 1.47 multiplier where lodestar analysis used as cross-check), *quoting Newberg on Class Actions* § 15.87 (5th ed. 2016). The potentiality of a lodestar multiplier makes the award to Plaintiff's counsel actually sought to be approved that much more reasonable to Plaintiff – rather than demanding Plaintiff's proportionate share of the proceeds being paid by Defendant be reduced by having fees calculated on a lodestar and multiplier basis, Plaintiff's counsel has agreed, as a compromise and part of the settlement, to payment of a settlement that pays a fraction of – rather than a multiplier of – Plaintiff's counsel's lodestar amount as fees.

In summary, if there were not a settlement, and Plaintiff proceeded and prevailed (which Defendant does not concede would be the appropriate result), Plaintiff would seek an appropriate award against Defendant for Plaintiff' counsel's fees for the work performed. Even based solely on the work to date, those fees would exceed the award to counsel provided for in the settlement, and approval of these fee amounts is reasonable and fair to Plaintiffs.

# CONCLUSION

For all these reasons, the parties jointly move that the Court approve the parties' settlement.

Respectfully submitted:

/s/ Mark N. Foster
Mark N. Foster, BPR # 023626
Law Office of Mark N. Foster, PLLC
P.O. Box 869
Madisonville, KY 42431
(270) 213-1303
MFoster@MarkNFoster.com
*Counsel for Plaintiff*

/s/ Thomas W. Shumate, with permission by Mark N. Foster
Thomas W. Shumate
Meridian Law PLLC
5141 Virginia Way, Ste. 320
Brentwood, TN 37207
(615) 229-7499
tom.shumate@meridian.law
*Counsel for Defendants*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date indicated on the Court's CM/ECF system's Notice of Electronic Filing, a copy of this document was served on opposing counsel through the Court's CM/ECF system.

/s/ Mark N. Foster
Mark N. Foster